UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA

In re: :  Chapter 11
B & B Real Estate General Partnership,
    Debtor-in-Possession :  Case No. 16-bk-02183-RNO

:

# DEBTOR'S AMENDED PLAN OF REORGANIZATION, DATED APRIL 24, 2017

## ARTICLE 1
## SUMMARY

    This Amended Plan of Reorganization (Plan) under Chapter 11 of the Bankruptcy Code (Code) proposes to pay all of the creditors' arrearage claims of B & B Real Estate General Partnership (Debtor), in full.

    This Plan provides for 2 classes of secured claims, 0 classes of unsecured claims and 1 class of equity interest holders. This Plan also provides for the payment of administrative and priority claims, if any, in full, within one year of the effective date of this Plan.

    All creditors and equity interest holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. An Amended Disclosure Statement (Disclosure Statement) that provides more detailed information regarding this Plan and the rights of creditors and equity interest holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    <u>Class #1</u>    Secured Claim
                           Monroe County Tax Claim Bureau
                           Proof of Claim No. 1
                           Collateral: 117 Rose Street,
                           Scotrun,, Monroe County, PA

1

2.02    Class #2        Secured Claim
                        Newtek Small Business Finance, LLC
                        Proof of Claim No. 2
                        Collateral: 117 Rose Street,
                        Scotrun,, Monroe County, PA

2.03    Class #3        Equity Interest Holders
                        Interests of the Partners, Robert C. Bishop
                        and Barry Klein, in any remaining assets
                        of the estate


# ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims. Under §1123(a)(1), administrative expense claims, [gap period claims in an involuntary case allowed under §502(f) of the Code] and priority tax claims are not in classes.

3.02    Administrative Expense Claims. Each holder of an administrative expense claim allowed under §503 of the Code [and a gap claim in an involuntary case allowed under 502(f) of the Code] will be paid in full on the effective date of the Plan (as defined in Article VII), in cash or upon such terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    Priority Tax Claims. Each holder of a priority tax claim, if any are discovered, will be paid in full, in cash, on the effective date of the Plan.

3.04    United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.


# ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under this Plan:

2

### Class #1 - Monroe County Tax Claim Bureau (MCTCB)
### Proof of Claim No. 1

The MCTCB has a secured claim against Debtor. The secured claim amount is $386,440.25 and the arrearage is also $386,440.25. The MCTCB filed a proof of claim with regard to these amounts and Debtor has no objection to this proof of claim. This claim is fully secured. The claim is for unpaid real estate property taxes. It is a first priority lien and it generates interest at Nine (9%) Percent. The collateral is the commercial parcel of real estate located at 117 Rose Street, Scotrun, Monroe County, Pennsylvania. Claimant is not an insider. The claim is impaired with regard to timing of payment because the real estate property taxes have already come due and Debtor is proposing to pay 100% of the claim, including any accrued interest, within 96 months of the effective date of the Plan. The first payment regarding the payment of the arrearage claim shall be due within 30 days of the effective date of the Plan. Furthermore, Debtor agrees to remain current with all post-petition real estate property taxes as they come due.

Finally, with regard to the payment of arrearages, Debtor shall pay the MCTCB and Newtek, on an equal, dollar for dollar basis, and on a monthly basis, until each claim is paid in full.

### Class #2 - Newtek Small Business Finance, LLC (Newtek)
### Proof of Claim No. 2

Newtek has a secured claim against Debtor. The secured claim amount is $1,616,713.59 and the loan arrearage is $98,883.49. Newtek filed a proof of claim with regard to these amounts and Debtor has no objection to this proof of claim. The claim is secured. However, it is not fully secured. Debtor waives its right to cramdown this amount under Section 506 of the Code. This claim has arisen as a result of a commercial loan made by Newtek to Debtor and a related entity of Debtor, B & B Fitness. Newtek holds a first mortgage against Debtor's real estate which is located at 117 Rose Street, Scotrun, Monroe County, Pennsylvania. The arrearage occurred as a result of Debtor's failure to pay the monthly commercial loan payments in a timely fashion. Newtek's lien is second in priority since the MCTCB holds the first priority lien. Claimant is not an insider. The claim is impaired with regard to the timing of payment because Debtor has failed to pay the monthly commercial loan payments when they came due and under the Plan, Debtor is proposing to pay the loan arrearage within 36 months of the effective date of the Plan. The first payment by Debtor regarding the payment of the loan arrearage shall be due within 30 days of the effective date of the Plan.

Debtor is also proposing to continue to pay its regular monthly commercial loan payments to Newtek and in accordance with the loan documents executed by Debtor with Newtek. Also, nothing in Debtor's proposed Plan is meant or should be construed as an attempt to amend or alter the terms of the loan documents.

Furthermore, Newtek shall retain its mortgage lien against Debtor's real property until Newtek's commercial loan is paid in full by Debtor.

As noted above, Debtor shall pay the MCTCB and Newtek, on an equal, dollar for dollar basis, and on a monthly basis, until each claim is paid in full.

Finally, as previously discussed, Debtor shall also pay to Newtek the proceeds from the daycare tenant, in the amount of $2,500.00, which has already been approved by the Bankruptcy Court. These proceeds shall be applied to the loan in accordance with the original loan documents executed by the parties and applicable SBA regulations. Thereafter, Newtek shall continue to receive these payments and Newtek shall be permitted to apply these funds as it sees fit and in accordance with the terms of the original loan documents.

2. Class(es) of Priority Unsecured Claims

Certain priority claims that are referred to in §§507(a)(1), (4), (5), (6) and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The Debtor does not have any priority unsecured claims. If any priority unsecured claims are discovered, said claimants shall receive cash on the effective date of the Plan equal to the allowed amount of such claim.

3. Class(es) of General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

<u>Unsecured Claims</u>: The Debtor has no unsecured claims. In this regard, Holly R. Corcoran, CPA, waived her claim that she had against Debtor and Debtor is not aware of any other unsecured claims.

If any allowed, unsecured claims, are discovered, Debtor proposes to pay them, in full, immediately after the payment of all claims of a higher class of claims. This class would be impaired only with regard to timing of payment.

4. Class(es) of Equity Interest Holders

Equity interest holders are parties who hold an ownership interest (i.e. equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company (LLC), the equity interest holders are the members. Finally, with

4

respect to an individual who is a debtor, the Debtor is the equity interest holder.

### Class #3 - Equity Interest Holders

The Debtor has two equity interest holders in Class #3. The equity interest holders are Robert C. Bishop and Barry Klein, since they are the general partners who each owns a Fifty (50%) Percent interest in Debtor. Also, both of them are insiders. It is proposed that Robert C. Bishop and Barry Klein each retain their interest in Debtor and no payments shall be made to them with regard to their interests until all allowed claims are paid, in full. Consequently, this class is not impaired and they would not be permitted to vote, anyway, because they are insiders.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed (by a final non-appealable order) and as to which either: (i) a proof of claim has been filed or deemed filed and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed and Debtor has scheduled such claim as disputed, contingent or unliquidated. However, there are no disputed claims in this case.

5.02 Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed (by a final non-appealable order.)

5.03 Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 Assumed Executory Contracts and Unexpired Leases.

    (a) The Debtor assumes the following executory contracts and/or expired leases: The lease with B & B Fitness and Barbell, Inc.

    (b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a). None.

5

# ARTICLE VII
## MEANS OF IMPLEMENTING THE PLAN

1. Source of Payments

Payments and distributions under the Plan will be funded by the following:

Since the filing of this Chapter 11 case, the Debtor has made all post-petition loan payments/adequate protection payments to Newtek. Debtor has also been able to pay all of its other monthly obligations. The Debtor's most recently filed Monthly Operating Report is set forth as Exhibit B. This has been possible because of the reorganization of the related entity, B & B Fitness. The reorganization of that entity has enabled it to make its monthly lease payments to Debtor. In turn, Debtor has been able to pay all of its monthly obligations. Currently, Debtor has only two pre-petition claims and both claims are secured claims:

1. MCTCB $386,440.25 (arrearage of $386,440.25) and

2. Newtek $1,616,713.57 (arrearage of $98,883.49).

Prior to the filing of the bankruptcy, Debtor had been charging its principal tenant, B & B Fitness a monthly lease amount which was based upon Debtor's financial obligations, only. The regular monthly lease payment is $17,500.00. However, it is Debtor's intention to increase the monthly lease obligation in order to ensure that the lease amount is commensurate with similar leases in the industry. This graduated increase in the monthly lease obligation shall be used to pay the arrearages due to Debtor's two creditors. The increases shall be as follows:

1. A $2,000.00 per month increase in Year 1, starting 30 days from the Effective Date of the Plan;

2. A $3,000.00 per month increase in Year 2;

3. A $4,000.00 per month increase in Year 3 and;

4. A $5,000.00 per month increase in Year 4 through Year 7 and;

5. A $6,100.00 per month increase in Year 8 and thereafter, until the remaining MCTCB arrearage is paid, in full.

6

As a result, Debtor shall pay to each creditor, $1,000.00 per month in Year 1, $1,500.00 per month in Year 2, $2,000.00 per month in Year 3, $5,000.00 per month to the MCTCB (Newtek's arrearage will be paid in full by the end of the third year) during Year 4 through Year 7 and $6,100.00 per month in Year 8 and thereafter, until the remaining MCTCB arrearage is paid in full. Thus, Newtek's arrearage shall be paid, in full, within 36 months of the effective date of the Plan and MCTCB's arrearage shall be paid, in full, within 96 months of the effective date of the Plan. Please see payment charts set forth below.

**Arrearage Payments to MCTCB Under Plan**

| Month | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Year 8 | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1,000 | 1,500 | 2,000 | 5,000 | 5,000 | 5,000 | 5,000 | 6,100 | |
| 2 | 1,000 | 1,500 | 2,000 | 5,000 | 5,000 | 5,000 | 5,000 | 6,100 | |
| 3 | 1,000 | 1,500 | 4,000* | 5,000 | 5,000 | 5,000 | 5,000 | 6,100 | |
| 4 | 1,000 | 1,500 | 4,000* | 5,000 | 5,000 | 5,000 | 5,000 | 6,100 | |
| 5 | 1,000 | 1,500 | 4,000* | 5,000 | 5,000 | 5,000 | 5,000 | 6,100 | |
| 6 | 1,000 | 1,500 | 4,000* | 5,000 | 5,000 | 5,000 | 5,000 | 6,100 | |
| 7 | 1,000 | 1,500 | 4,000* | 5,000 | 5,000 | 5,000 | 5,000 | 6,100 | |
| 8 | 1,000 | 1,500 | 4,000* | 5,000 | 5,000 | 5,000 | 5,000 | 6,100 | |
| 9 | 1,000 | 1,500 | 4,000* | 5,000 | 5,000 | 5,000 | 5,000 | 6,100 | |
| 10 | 1,000 | 1,500 | 4,000* | 5,000 | 5,000 | 5,000 | 5,000 | 6,100 | |
| 11 | 1,000 | 1,500 | 4,000* | 5,000 | 5,000 | 5,000 | 5,000 | 6,100 | |
| 12 | 1,000 | 1,500 | 4,000* | 5,000 | 5,000 | 5,000 | 5,000 | 6,100 | |
| Total | 12,000 | 18,000 | 44,000 | 60,000 | 60,000 | 60,000 | 60,000 | 73,200 | **387,200** |

*Once the arrearage claim of Newtek is paid in full, the balance of the amount that was being paid to Newtek will be paid to MCTCB. It is estimated that Newtek's arrearage will be paid in full in Year 3.

7

### Arrearage Payments to Newtek Under Plan

| Month | Year 1 Plan | Year 1 Tenant | Year 2 Plan | Year 2 Tenant | Year 3 Plan | Year 3 Tenant | |
|---|---|---|---|---|---|---|---|
| 1 | 1,000 | 2,500 | 1,500 | 2,500 | 2,000 | 2,500 | |
| 2 | 1,000 | 2,500 | 1,500 | 2,500 | 2,000 | 2,500 | |
| 3 | 1,000 | 2,500 | 1,500 | 2,500 | | | |
| 4 | 1,000 | 2,500 | 1,500 | 2,500 | | | |
| 5 | 1,000 | 2,500 | 1,500 | 2,500 | | | |
| 6 | 1,000 | 2,500 | 1,500 | 2,500 | | | |
| 7 | 1,000 | 2,500 | 1,500 | 2,500 | | | |
| 8 | 1,000 | 2,500 | 1,500 | 2,500 | | | |
| 9 | 1,000 | 2,500 | 1,500 | 2,500 | | | |
| 10 | 1,000 | 2,500 | 1,500 | 2,500 | | | |
| 11 | 1,000 | 2,500 | 1,500 | 2,500 | | | |
| 12 | 1,000 | 2,500 | 1,500 | 2,500 | | | |
| **Total** | 12,000 | 30,000 | 18,000 | 30,000 | 4,000 | 5,000 | **99,000** |

Debtor also agrees that if the proposed payments referred to above are not made and consequently, Newtek's loan arrearage is not paid, in full, within 36 months of the effective date of the Plan and MCTCB's tax arrearage is not paid, in full, within Eight Years of the effective date of the Plan then, the case shall convert to Chapter 7 of the Bankruptcy Code.

Debtor also agrees that, in addition to the above described payments, it shall continue to pay its real estate property taxes to the tax collector, as they come due and continue to pay its regular monthly commercial loan payments to Newtek, as they come due. Furthermore, if these payments are not made then, Debtor agrees that the case shall convert to Chapter 7 of the Bankruptcy Code.

8

      2.      Post-confirmation Management

Robert C. Bishop, General Partner of Debtor, shall continue to manage the business after confirmation.

## ARTICLE VIII
## GENERAL PROVISIONS

      8.01    <u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

      8.02    <u>Effective Date of the Plan</u>. The effective date of the Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

      8.03    <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

      8.04    <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

      8.05    <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

      8.06    <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Pennsylvania govern this Plan and any agreements, documents and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## CONFIRMATION OF PLAN

      9.01    <u>Vesting of Property</u>. Pursuant to Section 1141(b) of the Code, the confirmation of the Plan shall vest all property of the estate in Debtor as of the effective date of the Plan.

9.02 **Discharge**. On the confirmation date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt imposed by this Plan.

## ARTICLE X
## OTHER PROVISIONS

This Plan is meant to address the legal issues, financial issues and arrearages of Debtor, only. The confirmation of Debtor's Plan in no way shall affect the legal or financial obligations of any other party, including B & B Fitness and Barbell, Inc. or any of the other co-debtors or co-guarantors of the commercial loan financed by Newtek Small Business Finance, LLC.

Date: __04/24/17__   /s/Robert C. Bishop, General Partner
Robert C. Bishop, General Partner
B & B Real Estate General Partnership,
Debtor-in-Possession

Date: __04/24/17__   /s/Philip W. Stock, Attorney
Philip W. Stock, Attorney for
B & B Real Estate General Partnership,
Debtor-in-Possession
Attorney ID #53203

10